UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

ROBERT LANGFORD,

                Plaintiff,                Case No. 1:11-cv-5

v.                                              Honorable Janet T. Neff

KENNETH McKEE et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint on immunity grounds and for failure to state a claim.

**Discussion**

I.        Factual allegations

Plaintiff presently is incarcerated at the Marquette Branch Prison but complains of events that occurred at the Bellamy Creek Correctional Facility (IBC) and Chippewa Correctional Facility (URF). In his *pro se* complaint, Plaintiff sues Warden Kenneth McKee, Deputy Warden C. Stoddard, Assistant Deputy Wardens (unknown) Schooley and (unknown) Johnston, Officer D. Trammell, Hearing Officer D. Israel, Hearing Administrator Richard Stapleton, Grievance Administrator J. Armstrong, Manager of Internal Affairs Division Stephen H. Marschke, Ombudsman Keith Barber and Investigator Kristi Dixon.

Plaintiff first complains of retaliation at IBC. On February 2, 2009, the Michigan Department of Corrections (MDOC) transferred Plaintiff to IBC. At that time, Plaintiff was given a food detail to sit at the handicap table in the chow hall.[1] In the beginning, prison guards asked Plaintiff for his food detail when he arrived at the chow hall but eventually the guards stopped asking. This practice, however, changed after Plaintiff sent a complaint to Warden McKee and Assistant Deputy Warden Stoddard on April 22, 2009. The complaint alleged discrimination against African American inmates at the prison and an unlawful 10% surcharge and 6% sales tax on items that the prisoners purchased at the prison store. After failing to receive a response from McKee and Stoddard, Plaintiff sent a request to Assistant Deputy Warden Schooley. Plaintiff states that Schooley spoke to him about the issues in Plaintiff's complaint. Besides the above complaint, Plaintiff states that he was also assisting another prisoner with that prisoner's civil rights action.

---

[1]According to Plaintiff, a "food detail" is an official order by the MDOC regarding a prisoner's meal. In Plaintiff's case, his food detail allowed Plaintiff to receive assistance during his meals and to sit at the handicap table. It is not apparent from Plaintiff's complaint as to whether he had any type of physical handicap.

On April 26, 2009, Plaintiff went to the chow hall for breakfast. After he finished eating, Plaintiff proceeded to exit the chow hall but he was stopped by Officer Trammell. Officer Trammell asked Plaintiff if he had a food detail to sit at the handicap table. Plaintiff replied that he had a detail but he did not have it on him. Officer Trammell ordered Plaintiff to produce the food detail and allegedly called Plaintiff an "asshole." (Compl., Page ID#3, docket #1.) Plaintiff told him that he did not have the detail because he left it at "your mom[']s house[,] bitch." (*Id.* at Page ID#4.) Officer Trammell then gave Plaintiff a major misconduct ticket for insolence and disobeying a direct order.

A few days later, Plaintiff alleges that Officer Trammell requested other officers to harass him about sitting at the handicap table. One officer refused to say anything to Plaintiff and the other officer asked Plaintiff for his identification.

On May 8, 2009, Hearing Officer Israel held Plaintiff's major misconduct hearing. After reviewing the evidence against Plaintiff from Defendant Trammell, Israel found Plaintiff guilty of insolence. Israel, however, reduced the disobeying a direct order charge to a minor misconduct charge of being out of place temporarily. Plaintiff was sentenced to fifteen days of loss of privileges. Plaintiff complains that Israel's decision was not supported by the evidence because his actions did not warrant either conviction. He further contends that Defendants are impeding his First Amendment right to freedom of speech by finding him guilty of the insolence charge when he did not refer to Trammell in a degrading matter.

Soon thereafter, Plaintiff was transferred to URF "as a Special Problem Offender Notification (SPON)."[2] Plaintiff complains that he was transferred to URF in retaliation for sending his complaint to Warden McKee and Assistant Deputy Warden Stoddard. Plaintiff then argues that he was subject to the following unconstitutional conduct at URF: Plaintiff can only make one phone call per day, he has to sign up to use the phone and shower, he has been harassed by officers, he has been denied copies from the law library, he has been denied call-outs for the law library, he has been denied medical treatment for his shoulder, he has had an officer attempt to close a cell door on him, and his incoming and outgoing mail has been delayed or confiscated. Because of those incidents, Plaintiff states that he became depressed and stopped eating for over thirty days.

While at URF, Plaintiff requested a rehearing on the April 26, 2009 major misconduct ticket from Hearing Administrator Stapleton. Plaintiff states that Warden McKee intercepted his legal mail and forged Stapleton's signature. Plaintiff also states that Defendants conspired against him to delay his appeal for his major misconduct convictions. Plaintiff was later transferred to Woodland Center Correctional Facility.

In summary, Plaintiff claims that Defendants violated his First, Eighth and Fourteenth Amendment rights. Plaintiff also alleges a conspiracy claim against Defendants. For relief, Plaintiff requests monetary damages.

II.  Immunity

Plaintiff sues Hearing Officer Israel in his complaint. Defendant is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are

---

[2] A Special Problem Offender Notification is used to document those situations where an offender is considered a threat to the safety of another offender or a Michigan Department of Corrections' employee, or a threat to the order or security of the facility. *See* MICH. DEP'T OF CORR. Policy Directive 03.03.110, ¶ E (effective 5/20/02).

required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, Israel is entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in his capacity as a hearing officer. *Id.*; *see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, the complaint against Defendant Israel will be dismissed.

      III.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Lack of Factual Allegations

Beyond naming them as Defendants, Plaintiff does not provide any allegations against the following Defendants in the body of his complaint: Johnston, Stapleton,[3] Armstrong, Marschke, Barber and Dixon. While Plaintiff alleges violations of his constitutional rights during

---

[3]Defendant Stapleton denied the rehearing of Plaintiff's major misconduct ticket on May 19, 2009. However, Plaintiff does not state any allegations against Stapleton in his complaint. Rather, Plaintiff claims that Warden McKee forged Stapleton's signature on the Major Misconduct Rehearing Report.

his incarceration at URF, he does not name any employees of URF as Defendants in this action.[4] It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Iqbal*, 129 S. Ct. at 1949 (The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."). Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Therefore, his complaint must be dismissed against Defendants Johnston, Stapleton, Armstrong, Marschke, Barber and Dixon. The Court will

---

[4]Reading Plaintiff's complaint liberally, he appears to allege a First Amendment access-to-the-courts claim for the denial of library call outs and copies and Eighth Amendment violations for the denial of medical treatment, harassment by officers and restrictions on his phone and shower during his incarceration at URF. *See Haines*, 404 U.S. at 520.

also dismiss Plaintiff's First and Eighth Amendments claims arising at URF because he does not attribute that conduct to any of the named Defendants.

### B. Supervisory Liability

Several Defendants are entitled to dismissal from Plaintiff's complaint because Plaintiff fails to allege that they actively engaged in unconstitutional conduct. Plaintiff claims that he sent a complaint to Defendants McKee[5] and Stoddard concerning discrimination against African American prisoners and an unlawful 6% sales tax and 10% surcharge on items sold in the prison store. Defendants McKee and Stoddard, however, never responded to Plaintiff's complaint. Plaintiff also alleges that he spoke to Defendant Schooley about the complaint to no avail.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

---

[5] Plaintiff also claims that Defendant McKee forged Defendant Stoddard's signature on the rehearing decision of his major misconduct convictions. Plaintiff has not alleged any constitutional right that Defendant McKee has violated. Moreover, Plaintiff has attached several rehearing decisions signed by Stoddard to his complaint. Defendant Stoddard's signature was identical in each one. *See* Mich. Dep't of Corr. Request for Rehearing, Attach. A to Compl., Page ID##14, 17, 34; *see also* Mich. Dep't of Corr. Request for Rehearing, Attach. B to Compl., Page ID##62, 71, 77.)

1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants McKee, Stoddard and Schooley engaged in any active unconstitutional behavior, and, thus, Plaintiff fails to state a claim against those Defendants.

### C.     Due Process - Misconduct Ticket

Plaintiff claims that Defendant Trammell issued a false misconduct against him for insolence and disobeying a direct order. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[6] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011. In the absence of a demonstrated liberty interest, plaintiff has no due-process claim. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

---

[6]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

Because Plaintiff only lost fifteen days of privileges, he has not identified any significant deprivation arising from his misconduct conviction. Therefore, Plaintiff's due process claim fails against Defendant Trammell for his misconduct ticket.

### D.     First Amendment - Retaliation

Plaintiff alleges that Defendant Trammell retaliated against him for sending a complaint to Defendants McKee and Stoddard and for working on another prisoner's civil rights action.  Specifically, Plaintiff alleges that Defendant Trammell asked for his food detail and then gave him a "false" misconduct when he could not produce the food detail and called him a "bitch." Plaintiff also claims that Defendant Trammell coerced other officers to retaliate against him. Plaintiff further complains that Defendants retaliated against him by transferring him to another prison.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

By sending his complaint to Defendants McKee and Stoddard, this Court assumes that Plaintiff satisfies the first element for a retaliation claim.

As for the second element, Plaintiff lists the following adverse actions in his complaint: Defendants transferred Plaintiff to another prison, Defendant Trammell asked Plaintiff for his food detail and then issued a major misconduct against Plaintiff, and Defendant Trammell coerced other prison guards to harass Plaintiff. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis added).

First, Plaintiff cannot show that his transfer to URF was an adverse action taken against him for sending a complaint to Defendants McKee and Stoddard. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house

mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill v. Lappin*, 630 F.3d 468, 474-75 (6th Cir. 2010).

Plaintiff's transfer was from one level I, II and IV facility (IBC) to another level I, II and IV facility (URF). Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 474-75 ; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to courts was compromised as a result of the transfer. Once he arrived at URF, Plaintiff claims that he was subject to several unconstitutional acts under the First and Eighth Amendments. Plaintiff claims that his phone calls were limited, he had to sign up to use the phone and shower, he was harassed by officers, he was denied copies from the law library and call-outs, he was denied medical treatment for his shoulder, an officer attempted to close a cell door on him and his incoming and outgoing mail were delayed. IBC Defendants would not have had any reason to know or to foresee what would occur at URF once Plaintiff arrived. Furthermore, IBC Defendants could not control the actions of individuals at URF. Therefore, Plaintiff fails to state a claim for retaliation for his transfer to URF.

Second, Plaintiff cannot show that Defendant Trammell's request for Plaintiff's food detail was an adverse action. In his complaint, Plaintiff contends that Defendant Trammell had stopped asking for his food detail at the chow hall because Trammell had become used to seeing Plaintiff at the handicap table. Plaintiff, however, conceded that prisoners are required to have the food detail on his or her person in the chow hall. (Compl., Page ID#3, docket #1.) On April 26, 2009, Trammell asked to see Plaintiff's food detail but Plaintiff could not produce the detail. Because it is requirement for prisoners to have a food detail on his or her person in the chow hall,

it was entirely reasonable for Trammell to ask for Plaintiff's food detail. Accordingly, Defendant Trammell's request for Plaintiff's food detail was not sufficiently adverse.

Third, Plaintiff fails to allege a causal connection between the complaint that he sent to Defendants McKee and Stoddard and Defendant Trammell's conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Plaintiff sent the complaint to Defendants McKee and Stoddard on April 22, 2009 and he received the major misconduct from Defendant Trammell on April 26. Plaintiff, however, fails to allege any connection between the two events. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Plaintiff also acknowledged that the guards could request his food detail at any time. When Plaintiff could not produce his food detail for Defendant Trammell in the chow hall on April 26, Plaintiff admittedly told Trammell that he did not have the detail because he left it at "your mom[']s house[,] bitch." (*Id.* at Page ID#4.) Trammell then issued Plaintiff a major misconduct ticket for insolence for the degrading remark towards him and for disobeying a direct order for failing to produce the food detail. The facts strongly suggest that the motivating factor of the major misconduct was Plaintiff's degrading remark to Defendant Trammell and his inability to produce the food detail. In the absence of any communication between Trammell and McKee and Stoddard, Plaintiff's allegations are wholly conclusory and fail to demonstrate that retaliation was plausible under *Iqbal* and *Twombly*. *See Twombly*, 550 U.S. at 570;

*Iqbal*, 129 S. Ct. at 1949.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).  Because Plaintiff has failed to allege any retaliatory motive on behalf of Defendant Trammell, Plaintiff fails to state a First Amendment retaliation claim for the major misconduct ticket.

Finally, Plaintiff alleges that Defendant Trammell retaliated by coercing other prison guards to harass Plaintiff in the chow hall.  As Plaintiff stated in his complaint, one prison guard refused to do anything to Plaintiff and the second prison guard just asked Plaintiff for his identification.  (*Id.* at Page ID#4.)  Prison guards are free to ask prisoners for their identification.  Those actions therefore are wholly insufficient to support a First Amendment retaliation claim.

### F. First Amendment - Free Speech Clause

Plaintiff alleges that Hearing Officer Israel violated Plaintiff's First Amendment right to freedom of speech when Plaintiff was found guilty of the charge of insolence in a major misconduct.  Plaintiff claims that telling Defendant Trammell that Plaintiff's food detail was at Trammell's "mom[']s house[,] bitch," was protected speech under the First Amendment.  (*Id.* at Page ID#4.)

The Supreme Court has explained that although "incarceration does not divest prisoners of all constitutional protections," the "constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001).  In the specific context of the First Amendment, the Court has stated that "some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.' " *Id.* at 229 (quoting *Pell v. Procunier*,

417 U.S. 817, 822 (1974)). Plaintiff was disciplined for making a derogatory remark to a prison guard. In light of the narrowed scope of the First Amendment in the prison context, disciplining Plaintiff for this speech was reasonably related to the legitimate interests of prison officials in maintaining order and ensuring stability in the prison. *See Heard v. Caruso,* 351 F. App'x 1, 10 (6th Cir. 2009). Plaintiff therefore fails to state a claim for a violation of his First Amendment rights under the Free Speech Clause.

### G. Conspiracy

Plaintiff states that Defendants conspired against him to delay his appeal for his major misconduct convictions. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a

claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Therefore, Plaintiff fails to state a claim for conspiracy.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on immunity grounds and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997), *overruled in other part by Jones v. Bock*, 549 U.S. 199, 206, 211-12 (2007). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: July 12, 2011          /s/ Janet T. Neff
                              Janet T. Neff
                              United States District Judge